GEORGE LIGARE

v.

JOSEPH PEACOCK.

*Filed at Ottawa January 23, 1884.*

1. BILL FOR AN ACCOUNTING—*at what stage of the suit an account may be taken.* On bill by one partner against another for an account of the partnership matters, the first thing to be determined is, whether the parties are, in equity, required to account. When this is so found, the case should be referred to the master to hear the evidence and state an account. Until the case comes before the master there is no necessity to take evidence as to the state of the accounts.

2. SETTLEMENT—*receipt as evidence thereof.* Where property of one person is sold by another, and a receipt given for a certain sum, even though for a less sum than the amount of the sale, the giving of such receipt will authorize the presumption of a settlement of such transaction.

3. PARTNERSHIP—*presumption as to equality of interest.* Where the fact of the existence of a partnership is established, in the absence of proof to the contrary it will be presumed that the interest of each partner is equal.

4. SAME—*what business embraced in the partnership arrangement—evidence thereof.* It was contended by one party to a bill for a partnership account, that there was a partnership between him and the other party in the sawing of lumber, and also in a lumber yard in Chicago, to which the lumber, when sawed, was shipped, while the latter contended that the partnership did not embrace the business in Chicago, and as evidence to corroborate his statement showed that he had made annual accounts, in which he credited the firm with the lumber he received at wholesale prices, to which accounts no objection was made: *Held,* that this was not evidence proving there was no partnership in the business at Chicago. If there was such a partnership, it mattered not what price was credited for the lumber. It could only amount

to a memorandum of the amount received, and for which the party receiving should account.

5. SAME—*dissolution—what so regarded.* After the formation of a partnership, by which one of the partners was to manufacture lumber and ship the same to the other in Chicago, to be there sold by the latter, each to share equally in the net profits, and the business was carried on for several years, the partner in Chicago refused to furnish any supplies for the manufacture of lumber, and the other refused to ship any more lumber to him, nothing being done by either, after this, recognizing the partnership as existing: *Held,* that this was as effectual a dissolution as if the parties had formally and specifically agreed that the partnership should then terminate.

6. Where both partners refuse to perform their part of the partnership agreement, there is no rule of law requiring or recognizing a continuance of the partnership. Even if one partner refuses to act under the partnership agreement, the other may elect to consider it as terminated.

7. SAME—*use of partnership property by one party, after dissolution—liability.* Where a partner, after a dissolution of the partnership, remains in possession of the partnership property, as saw-mills, manufacturing and selling lumber to others on his own account, he will be required to account to the firm for a reasonable rent of the property, after deducting repairs, taxes paid, and necessary expenses in its preservation; and if he appropriates firm property to his own use, he must account for it at a fair cash value.

8. SAME—*excess in capital advanced by one partner—adjustment in respect thereto, on an accounting.* Where one partner furnishes more than one-half of the capital employed in a firm, when the partner's interests in the business and net profits are equal, his co-partner, in adjusting the partnership account, should be charged with six per cent interest per annum on one-half of the excess of the capital so furnished,—or, what amounts to the same thing, the firm should be charged with that rate of interest upon all capital furnished by the one partner more than the other, treating such excess as a loan to the firm.

9. SAME—*adjustment on an accounting and final settlement—in the particular case.* On the settlement of a partnership between A and B, in the manufacture and sale of lumber, in which A was to furnish, and did furnish, all the supplies for the manufacture of the lumber, which was shipped to him in Chicago, to be there sold by him as partnership property, A should be charged with all the lumber shipped to him, with the profits derived from its sale, and credited with all expenses of the yard in Chicago, and all supplies furnished by him to B to enable him to operate the mills in making the lumber, and for all firm money he may have appropriated to his own use he should be charged with interest from the time of such appropriation. A should also be charged with all supplies furnished to him by B, and credited with all funds paid out by him for logs, etc., in operating the mill, and if he still retains any of the firm money, or has used any of its property after the

dissolution, he should be charged with it, and interest from the time of such appropriation to his own use; and each of them will be entitled to a credit for any means advanced by him in reconstructing or repairing the mill, or for its improvement.

10. SAME—*partner's right to charge for services.* In the absence of any agreement to the contrary, partners will not be entitled to charge the firm for their services, time or skill in conducting its business. The presumption is that each partner is required to use his skill, time and labor for the promotion of the interests of the firm.

APPEAL from the Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

Mr. C. C. BONNEY; Mr. S. M. MOORE, and Mr. LYMAN M. PAINE, for the appellant.

Messrs. J. P. & T. R. WILSON, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a bill filed by appellant for an account of partnership matters between him and appellee. An answer was filed by appellee, and he also filed a cross-bill, to which appellant filed an answer. The court below referred the case to the master to hear evidence and state an account between the parties, and report his findings to the court. After a hearing, the master reported an account, with the evidence, and his report was approved, and a final decree was rendered against complainant for $21,280.61, and the case was removed to the Appellate Court, where the decree was affirmed, and he brings the record to this court, and urges a reversal.

This record contains a large amount of irrelevant matter, and evidence relating to the previous pursuits of the parties, and a considerable portion appears to have been duplicated in the record, and the record is greatly incumbered, and imposes a great amount of unnecessary labor to separate the important from the immaterial matter in the abstract and record.

In such a case as this the first question to be determined is, whether the parties are in equity required to account, and being so found, the case should be referred to a master to hear the evidence and state an account. Until it comes before the master there is no necessity to take evidence as to the state of the accounts. If previously taken, it unnecessarily incumbers the record. It is true appellee denies the partnership was formed in April, 1853, but appellant, who testifies it was, is strongly corroborated by other witnesses, and appellee testifies so recklessly, and with such manifest feeling, that it detracts greatly from the weight of his evidence. He testifies that when appellant took charge of the mills he was to receive only such compensation as appellee saw proper to give him. In another part of his evidence he says appellant was to take charge of and operate the mill for his board, until the partnership should be formed. He states that he released the mortgage on the forty acres of land because appellant's wife cried, and besought him to do so. Now, these statements are too incredible for ready belief. He swears to facts as true, of which he could not possibly have had any personal knowledge. He manifests great bitterness and hatred of appellant. On the other hand, appellant testifies with apparent candor, and is corroborated in much of his evidence by other witnesses. On reviewing the whole of the evidence on this question, we are of opinion it proves that the partnership commenced in April, 1853. We therefore must hold that the statement of the account must commence at that time, and extend down to the time the partners refused to proceed further and do anything more under the partnership agreement.

Then, what were the terms of the contract of partnership? It not having been reduced to writing, they must be gathered from the statements of the parties, and the circumstances attending the transactions had under it.

Appellant testifies that the partnership was to be equal, and he is corroborated by the agreement by appellee, in February, 1854, to convey to appellant one-half of the property, which he subsequently did; but where a partnership is proved to exist, in the absence of proof to rebut it the presumption is that it is an equal partnership. Had appellant's interest been less than one-half, the property would surely have been conveyed in proportion to that interest. Appellant testifies that he was to take charge of the mills, manufacture lumber, and ship it to appellee at Chicago, and he was to sell it, and they were to share the profits equally. This appellee denies, and insists that he was to purchase it from the firm at the current wholesale prices of such lumber in that market at the time it was received. If this was the contract, why did appellee consult, by letter, with appellant as to the location and other particulars in reference to his opening a lumber yard in Chicago? Why write appellant threatening to close the yard if the mill could not furnish more lumber? If appellant was not a partner in that yard, what interest was it to him whether appellee had a lumber yard, or where it was located, or whether, when appellee had opened it, it should be closed or remain open? If the agreement was as claimed by appellee, it was not of the slightest concern to appellant whether there was a lumber yard in which it should be placed for sale. Nor can we believe any intelligent business man would have so written appellant if he had no interest in the yard. We are therefore of opinion that appellant was a full partner in the business at Chicago, and after paying the firm debts, and deducting all expenses of the business in the yard, is entitled to one-half of the profits.

But it is said that appellee rendered annual accounts, in which he credited the firm with the lumber he received at the wholesale price, and appellant never objected to the accounts. It is insisted this is strong evidence that the agreement was as appellee states it. If there was a full

partnership in the business at Chicago, as we think there was, it was not of the slightest importance at what price the mill was credited, or whether at any price, as it was only intended as a memorandum to show what amount of lumber had been received by appellee for which he should account on a final settlement, with the profits made on its sale. This being the purpose, it did not matter to appellant what, if any, price was fixed on the lumber. He was only concerned to know that the proper amount was credited, and this being so, he was not required to object. In fact there was nothing to which he should object.

Appellant is entitled, in stating an account, to a credit of $2500,—the amount of the receipt given by appellee. It is true that the sale of the Canal street lots was for a larger sum over and above the amount appellant owed appellee when he took the assignment of the contract of sale to appellant, with the balance of the purchase money paid by appellee added, but the payment of taxes and other claims appellee may have had to pay may have amounted to the difference. At any rate, we must presume that a settlement of that matter was made when the receipt was given. The fact that the receipt was given, as this was, authorizes the presumption that there was a settlement of that transaction.

When did the partnership terminate? Was it at the time both parties refused to go on under the partnership agreement, or when appellee sold out his half of the property, on the 15th of October, 1864? Appellee refused to furnish supplies, and appellant refused to ship any more lumber to him, nor did either one do anything afterwards that recognized the partnership as existing. This was as effectual a dissolution as if the parties had formally and specifically agreed that it should then terminate. When both parties refused to perform their part of the partnership agreement, there is no rule of law requiring or recognizing a continuance of the partnership. Even when one of the partners refuses

to act under the partnership agreement, the other partner may elect to consider it as terminated. Here both parties, by their statements and acts, treated the partnership as ended. When one partner refuses to do what he is required to do under the agreement or the law, as a general rule the other partner can not carry on the business of the firm. Partnerships are formed for the joint action, influence and skill of each individual member of the firm. In this case appellant continued in possession of the firm property at the mills, manufactured lumber, and shipped and sold it to other persons and in other markets, and in doing so must be held to account for the property thus retained. At the dissolution of the partnership, appellee no doubt had firm lumber and money in his hands, for which he must account on a settlement of the business of the partnership.

Under what rules shall appellant account? Shall he be held for the value of the property, with interest, or for it and all profits he may have made after the dissolution, and before appellee sold to McDonald & Co.? Appellee has referred to numerous authorities that establish the rule that when the partnership is terminated by the death of a member of the firm, or by a withdrawal of one partner, and the survivor retains the firm property and continues the business, he is held liable to account for profits. This is the undoubted rule in that class of cases. The law imposes it as a duty on the survivor when the partnership is thus terminated, to wind up its affairs, and account with the legal representatives of the deceased partner or to the withdrawing partner, and the survivor failing in this duty, becomes liable to account for profits, if any, after the dissolution, and to account for principal and interest, if there are no profits. But this case does not come under that rule. Here, when the partnership ended, each partner had in his hands, and retained, a portion of the assets of the firm. Each having retained a portion of the firm assets, it would be inequitable to require

one partner to account for profits, and permit the other to use, it may be, an equal or greater amount of the firm capital in other business, equally, or, it may be, more profitable, and to render no account for its use. Appellee has no doubt used in his business, since the dissolution, the firm money or property retained by him, and if he used it in other business, or loaned it, it would be impracticable to trace it and ascertain the profits or accumulations he has derived from its use. As each retained a portion of the firm assets, and neither demanded a settlement of the affairs of the firm and a division of the assets, the principles of equity and justice authorize, if they do not require, that we regard what each retained as a division *pro tanto*, and that each be charged with the sum so retained, and account for the portion in his hands. This is fair and just, and is demanded by equitable principles.

Here appellee, after the partnership was dissolved, retained the portion of assets in his hands, and it was as fully his duty to proceed to wind up the affairs of the firm, as it was that of appellant. When dissolved, either partner had the power to compel an adjustment of all the business of the firm, and a settlement between the partners, but neither took any such steps; and both having delayed in compelling a settlement for so great a length of time, the firm money in the hands of each has no doubt been invested in their business, and assumed such a variety of shapes in different kinds of business that the fund and its increase can not be traced and identified. Appellant ·must therefore account for a reasonable amount of rent for the use of appellee's interest in the mill property, with interest from the date of the dissolution of the partnership until appellee sold to McDonald & Co., but may deduct therefrom necessary expenses in preserving the property, and taxes paid on it. He must be charged with and account for the goods and stores, the logs, and all other personal property at the mills at the time of the dissolution of the partnership, and all money due the

firm and collected by him, with interest on these several sums
from the time of the dissolution.   He will be credited with
any sum he may have paid on debts owing by the firm.   It
is not questioned that appellee furnished all the capital to
purchase and put into operation the mills at Ford river.   It
therefore follows that appellant should be placed under the
same burthens as appellee.   Appellant must, as a matter of
justice, be charged with six per cent interest per annum on
one-half of the excess of capital furnished by appellee above
that furnished by him,—or, what amounts to the same thing,
the firm must be charged with that rate of interest upon all
capital appellee furnished over that advanced by appellant.
That amount should be treated as a loan by appellee to the
firm.   Appellee should be charged with all the lumber shipped
from the mills to him, with the profits derived from its sale,
and he must have credit for all expenses of the yard in
Chicago, and all supplies furnished by him to appellant to
operate the mills, and for all firm money he may have ap-
propriated to his own use he must be charged with interest
from the time of the appropriation.   Appellant should be
credited by the receipt of $2500, as an advance on his share
of capital of the firm, and that receipt must be held as a
settlement between them of the transaction in relation to the
city lots and the mortgage on the forty acres of land.   That
precludes the master from going back of that date in refer-
ence to that transaction.   Appellant must be charged with
all supplies furnished to him by appellee, and credited with
all funds he paid out for labor, logs, etc., in running the mill,
and if he still retains any money of the firm, or used any of
its property after the dissolution of the partnership, he must
be charged with it, and interest thereon, at the same rate,
from the time he appropriated it to his own use.   And each
of them is entitled to a credit for any means advanced by
him in reconstructing or repairing the mill, or for its im-
provement, but neither is entitled to charge for his time or

skill in conducting the business of the firm, as no agreement was made that there should be any such charges, and according to the law governing partnerships, the presumption is that each is required to use his skill, time and labor for the promotion of the interest of the firm, unless it is otherwise provided by agreement of the parties.

If we have omitted to specifically direct on other questions in the statement of the account, the master will conform his action to well recognized rules for stating such accounts between partners. Many of them are so fully settled and recognized that specific directions are not required, and of that character are, perhaps, some of those in which we have announced the rules. But inasmuch as the account was not stated according to these rules, the decree must be reversed, and the cause remanded.

*Decree reversed.*

Mr. CHIEF JUSTICE SHELDON dissents.