## Lionel W. Richardson
### v.
## William H. Gregory.

*Partnership—Dissolution—Statute of Limitations.*

1. A specific agreement is not necessary to terminate a partnership; words and acts implying such intention are sufficient.
2. The statute of limitations begins to run from the dissolution of a partnership as to an action to settle the partnership accounts.

[Opinion filed May 28, 1888.]

Appeal from the Circuit Court of Winnebago County; the Hon. O. H. Horton, Judge, presiding.

Messrs. Marshall & Taggart, for appellant.

Mr. Wm. Lathrop, for appellee.

Lacey, J. This was a bill in equity filed by appellant against appellee July 10, 1885, seeking to settle a partnership account between the parties. It appears that the articles of co-partnership were entered into between them on the 23d day of June, 1870. By such articles the firm name was to be "Richardson & Gregory," and the object of the partnership was the manufacture and sale of diamond plows and vending and selling the right to others to sell the same, etc., to be constructed according to a patent that Richardson had applied for to the commissioner of patents of the United States, and which was not then issued but was expected to be. The co-partnership was to commence on June 23, 1870, and continue for the time said patent should run unless sooner dissolved by mutual consent.

Gregory was to furnish a sum of money not exceeding $10,000 at ten per cent. interest per annum, as the necessities of the business should require. Each of the parties at all

times during the continuance of the partnership was to give his attendance and each do their best and use their utmost skill and power to forward the interests of the concern, and to share equally the expenses.

The gains were to be divided as follows: Richardson to have 9-16 and Gregory 7-16. Books and true accounts were to be kept. Settlements were to be made first days of June and November of each year. At the end, or other sooner determination of the partnership agreement, a full and final settlement was to be made between them and all the gains and assets divided between them.

It was further stipulated that the said Richardson should never in any way or manner deprive or permit said Gregory to be deprived of his full share of 7-16 of said patent, "but the same shall be at all times used to their mutual benefit and advantage during the continuance of said co-partnership."

In appellee's answer the statute of five years limitations was set up and insisted on as a bar; it being averred that the partnership had been mutually dissolved more than five years prior to the bringing of the suit, and that the partnership affairs had been fully adjusted between them more than five years before filing the bill.

The issue seems to be whether the partnership had been dissolved for the length of time claimed by appellee, it being contended on the part of the appellant that the partnership did not terminate by its own limitation until about the time the complainant's bill was filed; it is claimed by the appellant that there had been no final settlement for the reason that the firm "still owned the patent, the source of almost all their other assets."

The facts tending to show that there was a dissolution of the partnership are not much disputed so far as the main features are concerned. Appellant testifies that the partnership had not been dissolved and that there had been negotiations or transactions between them, concerning the dissolution. "No negotiations between us concerning division of interests or sale of interests by one to the other in the patent." But it appears that there was an attempted settle-

Richardson v. Gregory.

ment of all the partnership accounts which ended May 15, 1878, in which, as the appellant swears, they "divided whatever assets they found in the company, principally notes, a portion of which I took and a portion went to him." "I think I took the plows and plow press; he took the letter press. There was a lease of college land divided previously. I don't think of anything more. There was a purported balance struck; that was what we were attempting to do. If there had been no errors that would have been a settlement up to that time. I don't know whether there would have been anything more aside from that." The settlement was never completed.

The appellee swears that there was a full and final settlement. It appears from the testimony of both parties that after 1873 no manufacturing was done or selling further than to settle up what had been previously sold. Appellee went to buying grain in August or September, 1880; up to that time he was engaged in settling up the old partnership accounts with its customers. No license fee was received or plows made after the attempted settlement.

The appellee swears that "no co-partnership act has taken place since 1877, other than the settlement of some old partnership matters that existed prior to 1877." The patent at the time of settlement was not considered; as appellee swears, "it was considered to be of no account, virtually dead, superseded by others; for that reason no account was made of it in the settlement."

It appears plain that the business of the partnership ceased as far back as 1877 by mutual consent. Although there was no express agreement that the partnership should be dissolved, it appears perfectly plain that it was dissolved by tacit consent and acquiescence, long prior to the attempted settlement in May, 1878.

At that time the entire known assets were divided, and each one took what at the time was considered to be his share according to the partnership agreement. It is true that the appellant claims there were large errors in the figuring by which the basis of the division of assets were arrived at.

But certainly the business of the firm to all intents and purposes had been dissolved in accordance with the terms of the agreement "by mutual consent."

As regards the patent, it will be seen by reading the agreement that there was nothing in it to show that the patent itself was assets of the firm, unless the partnership extended its full length. The use and benefit of the patent was all that was contracted for, and that was only for the time the partnership lasted.

In case the partnership was sooner dissolved by mutual consent, the patent would naturally belong to appellant. It was not assigned to the firm or agreed to be.

As far as the question of the dissolution is concerned, it would not matter whether the patent was an asset or not. At the dissolution, if it belonged to the firm, its value could have been adjusted and settled the same as the other assets. A bill might have been maintained by either party to compel settlement any time since 1877, and beyond doubt since 1878, if mistakes in settlement had occurred.

The last of appellee's letters concerning settlement was June 15, 1880, more than five years before the commencement of this suit.

A partnership is dissolved when both parties refuse to go on with the business. It is as effectual to dissolve a partnership as though there was an express agreement to dissolve. Both parties may by statements and acts treat the partnership as ended. Legare v. Peacock, 109 Ill. 94.

A partnership closes when there is an end put to the business itself. Bank of Montreal v. Page, 98 Ill. 119; Spurk v. Leonard, 9 Ill. App. 174.

The statute of limitations begins to run from the termination of the partnership in actions of account or bills in chancery to settle partnerships. Pierce v. McClellan, 93 Ill. 245; Quayle v. Guild, 91 Ill. 378; Askew v. Spring, 111 Ill. 662; Bonney v. Stoughton, 18 Ill. App. 562.

The court below dismissed the bill and we think properly.

The statute of limitations of five years having run since the dissolution of the partnership, the bill could not be maintained.

The decree of the court below is, therefore, affirmed.

*Decree affirmed.*