## LIONEL W. RICHARDSON

*v.*

## WILLIAM H. GREGORY.

*Filed at Ottawa November 15, 1888.*

1. PARTNERSHIP — *dissolution* — *what will constitute a dissolution.* Where partners, by mutual consent, cease to do business, and divide the partnership property, this will amount to a dissolution, as much so as if done by an express agreement to that effect.

2. The fact that there are mistakes and errors in stating a partnership account, does not militate against the conclusion that the business of the firm had been closed and the partnership dissolved by mutual consent. A dissolution will not necessarily depend upon a settlement between the partners. The power to close up the partnership accounts would still continue.

3. SAME—*relative rights after dissolution—in respect to a patent right owned by one of the partners.* The owner of a patent, before its issue, formed a partnership with another party for manufacturing under the patent, the latter to furnish the capital, each to share equally in the expenses, and the patentee to receive nine-sixteenths of the profits, and the remaining seven-sixteenths to go to the other partner. The contract of partnership provided that the patentee should "not deprive or permit the other partner to be deprived of his full share, or seven-sixteenths, of said patent right, but the same shall at all times be had and used to their mutual benefit and advantage during the continuance of said co-partnership." Before the expiration of the patent, by mutual consent, the firm was dissolved: *Held,* that after the dissolution the interest of the firm in the patent right no longer existed.

4. LIMITATIONS — *bill in equity for an accounting—as between partners—and herein, when the statute begins to run.* There being in matters of account concurrent jurisdiction at law and in equity, a court of equity, on bill by partners for an accounting, will apply the same period of limitation prescribed by the statute for barring actions of account in courts of law,—that is, five years.

5. On bill for an accounting as between partners, the Statute of Limitations will begin to run from the time of the dissolution of the partnership.

6. If errors have been committed in the settlement of a partnership account, the party complaining should file his bill in equity for their correction within a reasonable time. If he waits for seven years after knowledge of the error before attempting to assert his rights, he will be guilty of such a want of ordinary and reasonable diligence as to bar him from seeking relief in a court of equity.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Winnebago county; the Hon. O. H. HORTON, Judge, presiding.

Messrs. MARSHALL & TAGGART, for the appellant, contended that there were errors and mistakes in the so-called settlement of the partnership account, and that all the assets of the firm were not divided, and consequently there was no dissolution.

As between partners, the Statute of Limitations does not commence to run until the final dissolution of the firm.

Mr. WILLIAM LATHROP, for the appellee:

The settlement and division of property May 15, 1878, certainly ended the co-partnership, if it can be said to have continued until that time. The partnership in any business shall cease when there is an end put to the business itself. (*Spurck* v. *Leonard,* 9 Bradw. 174.) The same rule, in the same words, is adopted from Kent by the Supreme Court in *Bank of Montreal* v. *Page,* 98 Ill. 119. The same doctrine is laid down in Story on Partnership, secs. 266, 267.

All partnerships are dissolved by the mutual pleasure of the partners. Story on Partnership, sec. 268.

A partnership is presumed to be dissolved from the time "each partner, separately, is engaging in business, and acting for his own sole account." Story on Partnership, sec. 272.

The neglect or refusal to carry on a co-partnership is a dissolution. *Ligare* v. *Peacock,* 109 Ill. 94.

From the date of the settlement and division of May 15, 1878, the five years' limitation applied.

A bill for an account by one partner against another is barred by the lapse of five years from the dissolution of the firm. *Pierce* v. *McClellan,* 93 Ill. 245; *Quayle* v. *Guild,* 91 id. 378; *Askew* v. *Springer,* 111 id. 662; *Bonney* v. *Stoughton,* 18 Bradw. 562; 2 Lindley on Partnership, 963.

To an action for an account of partnership dealings and transactions, an account thereof already stated between the

parties, affords a good defense.    2 Lindley on Partnership, 967; Story's Eq. Pl. secs. 798, 800; Story's Eq. Jur. sec. 523.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

This was a bill filed by appellant, against appellee, for an accounting between them, as partners.    On the hearing, the circuit court dismissed the bill.    On appeal to the Appellate Court the decree of the circuit court was affirmed, and this further appeal is prosecuted therefrom.

The partnership, under the firm name of Richardson & Gregory, was entered into June 23, 1870, for the manufacture and sale of plows, to be manufactured under certain devices for which Richardson had applied for a patent, and for the sale to others license to manufacture thereunder.    The patent was not then issued, but in contemplation of its issue the partnership was formed, commencing the date above mentioned, and to continue for the life of the patent, unless sooner dissolved by mutual consent.    Gregory was to furnish capital not to exceed $10,000, as the same should be required, and was to be repaid with interest at ten per cent.    Each party was to devote himself to the business of the firm and in promoting its interests, and were to share the expenses equally,— the profits, Richardson, nine-sixteenths, and Gregory, seven-sixteenths.    Books were to be kept, and settlements had between the partners on the first days of June and November of each year.    The stipulation in respect of the patent was, that Richardson "shall not deprive or permit Gregory to be deprived of his full share, or seven-sixteenths, of said patent right, but the same shall, at all times, be had and used to their mutual benefit and advantage during the continuance of said co-partnership."    The bill alleges that divers sums of money belonging to the firm came to the hands of Gregory, for which he fails and refuses to account, etc., and seeks an accounting and settlement of the partnership affairs.

The answer, after admitting the partnership, sets up that the firm ceased doing business in manufacturing and selling plows, in January, 1873; that they then licensed one Thompson to manufacture under said patent, the license to determine when the licensee ceased to manufacture thereunder; that Thompson entirely ceased in 1876, and that no business of any kind has been done or prosecuted by the firm since said date, except the collection of outstanding accounts, and avers that long prior to June, 1877, the firm had entirely ceased to do business, without any intention to renew or farther prosecute the same; avers that in the spring of 1877 a full settlement was had of all partnership matters, and on review thereof in May, 1878, a final and complete settlement of all matters pertaining to the partnership or its business was had, the entire assets of the firm divided between the co-partners, and the partnership dissolved. The Statute of Limitations is set up and relied upon as a bar to the relief sought by the bill.

The questions presented are mainly of fact, as to the alleged settlement and dissolution of the firm. Appellant denies that there ever was a settlement of the partnership affairs, or that the co-partnership was ever terminated by mutual consent, but subsisted until a few months prior to the filing of his bill, by the terms of the contract of co-partnership,—that is, until the expiration of the patent mentioned. The testimony offered upon the issue was that of appellant and appellee, corroborated to a greater or less degree by memoranda and documentary evidence.

There is no controversy over the facts that the firm did a considerable business from the time of its organization to January, 1873, when it ceased to manufacture, and licensed Thompson, or that from that time until Thompson quit manufacturing under the license, in 1875 or 1876, the firm did no business except to sell its stock on hand, collect in its outstanding indebtedness, and collect royalty from Thompson; or that since Thompson ceased manufacturing under said

license, the firm have been engaged, in no way, in carrying on the business contemplated by the articles of co-partnership, save only the attempt to collect a balance of outstanding indebtedness owing to the firm for products previously sold. It is also conceded that there was an attempt to settle the partnership affairs on and prior to the 15th day of May, 1878, which, on that day, resulted, as testified to by appellant, in a division between the parties, of the assets of the firm. He testifies that on that day "we divided whatever assets there were found in the company. They were principally in notes, a portion of which I took, and a portion went to him. There was a list of them all—a list of what each took. The books were present. There were some old plows * * * returned by agents. I took the plows. He took the letter press. I took the plow press. There was a lease of college land. That was divided or arranged previously. I don't think of anything more." Nor is it now contended that there were other assets of the firm than those divided. He also testifies that they were ten days—perhaps twice that—in looking over the partnership affairs at that time, and says: "There was what purported to be a balance struck; that was what we were attempting to do. If there had been no errors it would have been a settlement up to date."

When the lists testified to are produced, it is found they have the following heading: "Statement of division of R. & G. assets on settlement, May 15, 1878, and settlement of account to date." Then first follows statement, viz:

Cr.

By whole amt. of assets in notes and bills - - - $13,954.18
By L. W. Richardson, bal. due R. & G. as per -     2,965.91
                                              ————————
                                              $16,920.09

To amt. due W. H. G. bal. account to
     May 1, 1878 - - - - - - - - $3,361.57
To L. W. R., dividend   - - - - -    7,626.66
To W. H. G., dividend - - - - - -    5,931.86
                                  ————————
                                  $16,920.09

Then follows, under heading: "L. W. Richardson rec'd payments as follows:" "A list of notes and accounts, including the individual note of Richardson for a small sum, and his account to the firm of $2965.93, and Gregory's note at ninety days for balance of $44.89, and footing up $7626.66, to which is appended the following receipt:

"Received these notes and bills on settlement with R. & G. this 15th May, 1878.      L. W. RICHARDSON."

A like list, under similar heading, and covered by a like receipt signed by Gregory, then follows, showing the receipt by Gregory of the amount due him to balance account, $3361.57, and for dividend, $5931.86.

Appellee testifies that they commenced to settle in 1877, and reached a basis of settlement; that in the spring of 1878 they reviewed, and reached a final and complete settlement of all partnership affairs May 15, 1878. "It was," he says, "a full and final settlement of the entire old business of the firm, and was so understood, and the assets were completely divided." In this he is corroborated by the foregoing facts, and we think the circuit court was fully warranted in finding that the affairs of the partnership were closed May 15, 1878. For over five years the business for which the partnership had been formed had been abandoned by mutual consent. The only license issued had expired, and it is not pretended that others could have been issued, or that it was contemplated that the business should, in any way or at any time, be resumed.

It is true, appellant insists there were errors to his prejudice in the settlement, and it is shown that from about June, 1878, to June 15, 1880,—the date of the last communication from appellee upon the subject,—he was endeavoring to have these alleged errors corrected. That, however, in no way militates against the conclusion that the business of the firm had been closed, and the co-partnership dissolved by mutual consent. The dissolution would not necessarily depend upon the settle-

ment between the partners.    The power to close up the partnership would necessarily continue.    (Story on Partnership, sec. 328.)    If errors existed in the settlement, there was nothing to prevent appellant's applying to a court of equity for their correction if his remedy at law was not complete, and, upon proper bill, filed in apt time, relief could have been given by a just re-statement of the account.    It is apparent that he knew of every error now claimed, in 1879, and probably in June, 1878.    Aside from the fact that the bill is not framed on that theory, he has not shown the exercise of such ordinary and reasonable diligence, after the lapse of seven years after knowledge of the error before attempting to assert his right, as will call into activity a court of equity.

Both parties treated the partnership as at an end.    Each was to devote his time and energies to the business of the firm, and yet, after 1877, and practically from 1873, each sought other employment, and both have been engaged exclusively in other avocations.    By mutual consent and acquiescence, the purpose to manufacture and sell plows was abandoned early in 1873, and all business relating to the partnership, except the adjustment of their accounts, ceased in 1877, and even that terminated finally, May 15, 1878.    The parties might terminate the partnership at their pleasure.    (Collier on Partnership, sec. 119; Parsons on Partnership, 385.)    The conclusion, from the facts, seems irresistible, that the business of the partnership was terminated, not only by the acts of the partners, but by mutual consent, prior to May 15, 1878.    This would as effectually dissolve the co-partnership as could be done by an express agreement to that effect.    3 Kent's Com. p. 52; *Ligare* v. *Peacock*, 109 Ill. 94; *Bank of Montreal* v. *Page*, 98 id. 119.

There being, in matters of account, concurrent jurisdiction at law and in equity, courts of equity, in bills for account, apply the same period of limitation prescribed by the statute for barring actions of account in courts of common law.    Actions of account are barred in five years.    1 Story's Eq. Jur. sec.

529; *Hancock v. Harper*, 86 Ill. 445; *Quayle* v. *Guild et al.* 91 id. 378; *Bonney* v. *Stoughton et al.* 122 id. 541. It follows, that more than five years having elapsed between the dissolution of the firm and the filing of the bill in this cause, the Statute of Limitations constituted a perfect defense, unless something is shown to remove the bar, or take the case out of the operation of the statute.

It is said that there was not a final division of the assets between the partners, and no dissolution of the firm, because the patent was not included in the distribution of assets, and remains undisposed of. Appellee testifies that the patent was regarded as wholly worthless, having been "superseded by others," and for that reason "no account was made of it." There is nothing in the agreement of co-partnership requiring its assignment by Richardson to the firm, or that it should become, in any way, a firm asset, unless the co-partnership should continue for the full period covered by the patent. When the co-partnership ceased, as will be seen from the extract from the agreement before given, Richardson's covenant to assure to Gregory seven-sixteenths of the patent during the continuance of the co-partnership, was fulfilled, and the right of Gregory to the patent, or the use thereof, ceased. At the time of the settlement, the dissolution having taken place by the consent and acquiescence of the parties, the firm retained no interest in the patent.

We perceive no error in this record, and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE BAKER took no part in the consideration of this case in this court, he having participated in the decision made in the Appellate Court.