## HEROD D. GARRISON

*v.*

## T. RIKER NUTE.

87 215
65a 287

1. CONTRACT—*sale of drug preparation, construed.* Where two persons entered into partnership for the manufacture and sale of a drug known as "Dr. Nute's Liquid Extract Œnothera," and, after a short time, one party sold out to the other all his interest and right in the copyrighted labels for such extract, and all printed labels, glassware and boxes, and all the crude herb for the preparation on hand, and covenanted, for the consideration of $200, not to engage in the manufacture or sale of "said liquid extract Œnothera," it was *held*, that the covenant did not prohibit the covenantor from making and selling any other preparation from the same herb, made in a different manner and possessing different qualities, and which all druggists had the right to make and sell, and that the words "said liquid extract," referred to the preparation known as Dr. Nute's.

2. SAME—*construction by the parties.* In case of doubt as to the proper construction to be put upon a contract, the acts of the parties, showing how they understood the same, will be taken into consideration by the court, as showing what the parties really meant.

APPEAL from the Superior Court of Cook county; the Hon. SAMUEL M. MOORE, Judge, presiding.

Mr. GEORGE C. CHRISTIAN, for the appellant.

Messrs. McCLANNAHAN & MARTIN, and Mr. E. F. BULL, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was a bill exhibited on the equity side of the Superior Court of Cook county, by T. Riker Nute, complainant, and against Herod D. Garrison, defendant, praying an injunc-

tion to restrain the defendant from making and selling "extract Œnothera Biennis," or from selling and disposing of that preparation he may have on hand, and for general relief.

The allegations of the bill are, that on September 1, 1873, these parties entered into a co-partnership for the manufacture and sale of a drug known as "Dr. Nute's Liquid Extract Œnothera," being a simple extract of the plant Œnothera, possessing rare medicinal qualities. There was an answer to the bill of complaint, denying that the article defendant, who was a practical chemist, was manufacturing was the same preparation as that of complainant, though made from the same plant, and much testimony was heard on this point, which we have attentively read, and are satisfied the preparations are not the same, nor did appellant assert they were, nor did he sell his preparation as the same, or attempt to simulate complainant's preparation in any way or form.

The covenant in the deed of sale was, that so long as appellee was interested in the manufacture of "said liquid extract Œnothera," he, appellant, will not engage in the manufacture for himself or others, or in the sale thereof, unless the same shall have been manufactured and put up by and with the consent of appellee.

This "liquid extract" must be understood to mean "Nute's liquid extract," and no other, as that was the subject of the bargain.

The fluid extract which appellant had been preparing and selling for years before this contract, and which was open to all druggists to manufacture and sell, it is claimed by appellant comes within the provision of this contract, and must be yielded up to him for the paltry consideration of two hundred dollars, and an account must be rendered to him of all sales made of that article since the contract was made. We do not think the contract, in view of the surrounding circumstances, will bear such a construction. As tending to show the construction now claimed was not that put upon the article when

entered into, it will be observed, by the terms of the contract, the stock appellant had on hand when the transfer was made to appellee, which consisted of the "fluid extract," was not delivered to appellee nor claimed by him as within the description of "Nute's liquid extract," the appellee knowing there was on hand a quantity of the fluid extract. It is unreasonable to believe, if appellee then supposed the fluid extract was comprehended under the term "liquid extract" he would not then have so declared, and demanded that stock as his own, under the contract. That he did not do so, is strong evidence that he did not then deem the fluid extract was embraced in the contract. The are a great many proprietary drugs on the market and in use, each having a distinctive name and prepared by a particular formula. Surely, it will not be contended that a drug may not be manufactured from the same plant or material, and sold under an appropriate name, without infringing on the proprietary rights of any person. The mode of preparation may and does make a material difference—so great as that the result may be a different medicine. By the testimony in the cause, the fluid extract of Œnothera is made from the leaves and small limbs or twigs of the plant known as "The Primrose," indigenous to this country, and found from Canada to Carolina, the solvent used being: alcohol 40 parts, water 48 parts, and glycerine 12 parts, and heat is employed in the distillation and evaporation. The drug is treated with repeated quantities of the solvent, largely in excess of the amount of finished extract, and the product is: one fluid ounce of extract to each troy ounce of the plant.

In making "Nute's liquid extract" the whole plant is used, stalks, roots, adhering soil and all, and coarsely ground together, and the solvent is cologne spirits. There is no distillation or evaporation, and, of course, no heat is used. The material is wetted once and then put under a pressure. The result depended on the wetting, the coarseness of the grinding and the pressure, and varied of course in the different operations.

Here is a marked difference in the preparation of the two articles, and the evidence shows there is a great difference in their effects upon the human system. In the sworn answer of appellant, it is alleged that Dr. Nute published a pamphlet introducing his preparation, in which he stated that it contained mucilaginous or gummy matter, a resin, one or more alkaloids and phosphates of potassa, soda, lime, iron and magnesia, a vegetable acid and tannin; that an analysis of appellant's compound showed that it does not contain either of the phosphates of potassa, soda or magnesia, and he states his belief that their presence in appellee's preparation is owing to the use of the root of the plant and adhering soil; that his own compound contains chlorine, aluminum and compounds of sulphuric acid in notable quantities, which are not known to exist in Nute's extract. It is further stated that Dr. Nute published an article, from which it would appear that doses of thirty drops of his preparation were attended with symptoms of a virulent poison, and relates an instance,—while his preparation taken in teaspoonsful is innocuous and safe, and this is proved by witnesses. We think all the facts concur in showing these preparations are essentially different, and that it was no part of the contract that appellant should not make and sell, after his own formula, the fluid extract of this plant. One Stephen B. Fuller, a witness for appellee, stated he went to appellant's drug store in February or March, 1874, to buy a bottle of "Dr. Nute's liquid extract Œnothera Biennis," and appellant said he had but one bottle, but had his own "fluid extract" made of the same plant, for the same diseases, of the same strength, and was the same thing, and as good as Nute's; that he made both and knew, and could sell his cheaper.

Appellant states in his affidavit that he does not know this witness, never saw him, and the statement is false. Here is oath against oath, and the charge is not sustained, there being no circumstance appearing in corroboration of Fuller's deposition. The fact is abundantly proved that no person could be

deceived, unless he desired to be, in the purchase of this article, and one could not be substituted for the other, the styles of labels and bottles used being wholly different.

We do not see any just ground on which to base this injunction and decree perpetuating the same. We do not find that appellant has violated his contract in any way, or that he has attempted a piracy on any of the proprietary rights of appellee, and the decree must be reversed and the bill dismissed.

*Decree reversed.*