**Mott R. Pharis et al., Appellees, v. Moline Plow Company et al., Appellants.**

### Gen. No. 5365.

1.  CONTRACTS—*what considered upon application to reform.* Even if there is doubt as to the intention of the parties in making the contract, the interpretation which the parties by their acts under the contract have practically given it, will have weight and may be controlling in arriving at the intention of the parties.

2.  CONTRACTS—*what defense inappropriate in action upon patent royalty contract.* Even though the contract may not specifically

estop the licensee from setting up invalidity and non infringement to an action for royalties, yet such defenses are inappropriate where the licensee continues to enjoy and claim the benefits of the license.

Bill in equity. Appeal from the Circuit Court of Rock Island county; the Hon. WILLIAM H. GEST, Judge, presiding. Heard in this court at the April term, 1910. Affirmed. Opinion filed October 18, 1910.

**Statement by the Court.** Mott R. Pharis · and Louis A. Keene, appellees, claiming to be the inventors of a machine known as the ''National Manure Spreader,'' on June 1, 1903, filed in the Patent Office at Washington, their application, No. 159,567, for letters patent on the improvements embodied in this machine. This National Manure Spreader, embodying the inventions and improvements made by appellees, was manufactured and sold for appellees by the Sandwich Enterprise Company, of Sandwich, Illinois, from the time of filing the application for the patent up to May 24, 1904. On May 24, 1904, the Moline Plow Company and the Mandt Wagon Company, corporations which have the same president and appear to work together, made a contract with appellees by which they obtained the exclusive right to make and sell the National Manure Spreader and agreed to pay appellees a royalty of $3 for each machine manufactured by appellants. On October 25, 1904, letters patent No. 773,505 were issued to appellees under application No. 159,567. Appellants did not make any of the machines until after the letters patent were issued. Between the fall of 1904 and July, 1907, appellants manufactured and sold 7,696 spreaders and paid the appellees about $20,000 royalty as agreed. On September 18, 1907, appellees were notified by a letter from appellants that the contract only required appellants to pay royalties on the spreaders during the life of said application No. 159,567, and that after the letters patent were issued, appellees were not entitled to any further royalties; that appellants had been paying

royalties by mistake until they learned from their attorneys that they were under no obligation to pay royalties under said contract. The appellants continued to manufacture and sell the spreaders, but refused to pay any further royalties for machines made subsequent to July 1, 1907.

The appellees filed this bill in equity, setting up the foregoing facts and the negotiations between the parties leading up to the written contract, which is pleaded at length. The bill alleges that by the agreement made between the parties, it was the mutual intention of appellants and appellees, and the agreement was that appellants would pay to appellees such royalty during the life of such application and the letters patent, to be issued on such application, so long as appellants manufactured such spreaders, and it prays that the contract be reformed and corrected to comply with the agreement, intention and understanding of the parties, and for an accounting.

The appellants answered the bill, admitting the appellees were the patentees of the spreaders, but neither admitting nor denying that the appellees were the inventors of the devices described in the letters patent, and stating that the machines made by appellants under the contract with appellees are an infringement upon a patent No. 534,810 held by James Taggert. Appellants admit in their answer that they paid royalty during the life of the application and also certain sums subsequent to the granting of the letters patent, but state that said sums were paid by mistake; they admit that they have manufactured and sold the spreaders since July 1, 1907, and that they refuse to pay further royalties; they admit the writing of the letter of September 18, 1907, but deny that the clause in the contract sought to be reformed was written by mistake, or that it was intended to make it any different than it appears in the written contract. They admit that appellees by said contract agreed to defend all suits for infringement, and state that James G. Taggert

has filed a bill in equity against appellants in the Federal Court seeking to recover damages for infringement, etc., and deny appellees are entitled to any relief. They also filed a cross bill, alleging the filing of the original bill and answer and that the spreader is an infringement on inventions owned by others, and that by the tenth paragraph of the contract of May 24, 1904, it is provided, that in case the said National Manure Spreader be found by the decision of a court of competent jurisdiction to infringe any of the essential features of any patent or patents owned by others, these cross-complainants should be released and relieved from liability to pay royalties under or by reason of said contract and that all such payments shall cease, and praying that the court pass upon and find that the National Manure Spreader, mentioned in the contract of May 24, 1904, infringes upon certain mentioned patents, and that cross complainants be relieved from any further payments under said contract.

Appellees filed exceptions to that part of the answer referring to infringement and moved to strike the cross bill from the files. The court sustained the exceptions to the answer and struck the cross bill from the files. A replication was filed, and the cause was referred to the master, who reported the evidence with his conclusions, reporting that the contract should be reformed and that there was due appellees $10,554. On a hearing the court overruled the exceptions to the report of the master, and entered a decree reforming the contract as prayed and decreed the payment to appellees of the amount found by the master to be due for royalty.

BANNING & BANNING and GEORGE W. WOOD, for appellants.

LUTHER L. MILLER and JACKSON, HURST & STAFFORD, for appellees.

MR. JUSTICE THOMPSON delivered the opinion of the court.

There are two questions involved in this case, first, are the appellees entitled to have the contract reformed; second, are the appellants entitled in this action to show the invalidity of the patents involved in the contract as a defense to the accounting prayed.

The evidence shows that the appellees were having the National Manure Spreaders manufactured elsewhere and sold at a considerable profit and that appellants solicited the exclusive right to make the manure spreaders under the invention of appellees and under any new devices for which appellees might obtain patents thereafter during the life of the patent; that appellees turned over to appellants, under the contract, the good will of the business, the exclusive right to continue to use the name "National" on the spreaders, the patterns and forms owned and used by appellees in the manufacture of the spreaders, the exclusive right to use the letters patent No. 773,505 and agreed to assign to appellants any patents concerning spreaders thereafter obtained by appellees, and to defend at their own expense the patents and all suits brought against appellants for alleged infringement, and to prosecute infringers.

It appears that the contract was prepared in typewriting with blanks to be filled in, and at the time of its execution the president of appellants drew a line through the word "patent" near the end of the contract and inserted the words "application for patent." It is on this change that appellants contend they never understood they were to pay royalties during the life of the contract. There are numerous clauses in the contract that conclusively show the contract was to cover and extend over not only the application but also the life of the patent. The oral proof made by appellees shows conclusively that both parties understood royalties were to be paid during the life of the patent, and this proof was not denied by any evidence

on the part of appellants. The appellants manufactured no spreaders under the application before the patent was issued. Under the theory of appellant, if it be true, they got the patent and all future inventions of appellees concerning the spreader, the right to use the name "National," all the patterns and forms used by appellees in the manufacture of the spreaders, and the obligation of appellees to defend the patents, defend suits for infringement and to prosecute infringers, for nothing during the life of the patent and yet appellants paid to appellees $20,000 in royalties under the patent during the first two and a half years after it was issued, when they say they were not required to pay anything under the contract.

The letter written by appellants September 18, 1907, to appellees and signed by appellants is:

"MOLINE PLOW COMPANY

MOLINE, ILLINOIS, September 18, 1907.
MESSRS. L. A. KEENE, Waterman, Illinois.
MOTT R. PHARIS, Syracuse, N. Y.

GENTLEMEN:

We have just learned that our liability to pay you royalties on manure spreaders under our contract with you dated May 24, 1904, long since ended by the issuance of your patent, and that the contract is, and for nearly three years has been, a fully paid up one. The contract specified that royalties should be due and payable 'only during the life of the application for letters patent of the United States No. 159,567, filed June 1, 1903.' This is the application on which your patent No. 773,505, of October 25, 1904, was issued. Our patent counsel advise us that an application for a patent only continues to be a live or pending application until the issuance of the patent, after which it has no life or existence as an application. It seems, therefore, that we have been paying you royalties after the expiration of the time specified in the contract. Now, however, that we have been informed of the fact —the expiration of the application specified—we must decline to pay you any further royalties under the contract or to recognize your right to any.

We deem it only just to you to say that we believe that in receiving royalties that you were not entitled to that you were as ignorant of the fact as we were in paying them.

Yours very respectfully,
MOLINE PLOW COMPANY,
By L. C. BLANDING Asst. Secy.
THE MANDT° WAGON COMPANY,
By L. C. BLANDING, Asst. Secy."

This letter with the other evidence established beyond doubt that the parties mutually understood that appellants were to pay royalties during the life of the patent. Even if there were any doubt as to the intention of the parties in making the contract, the interpretation which the parties by their acts under the contract have practically given it, will have weight and may be controlling in arriving at the intention of the parties. Walker v. I. C. R. R. Co., 215 Ill. 619; Whalen v. Stephens, 193 Ill. 121; Close v. Browne, 230 Ill. 228; Street v. Chicago Wharfage & S. Co., 157 Ill. 605; Garrison v. Nute, 87 Ill. 215; Kerz v. Galena Water Co., 139 Ill. App. 598; Bishop on Contracts, sec. 412. It is evident that the appellees were entitled to a reformation of the contract.

The principal question remaining relates to the action of the trial court in refusing appellants the right to set up that the patents were invalid and an infringement on patents held by other parties as a defense to the accounting, and to secure affirmative relief from liability on the contract by the cross bill.

The tenth section of the contract provides: "The said party of the first part agrees that in the event of their not being able to sustain their patents against infringements, or in the event of National Manure Spreader being found by the decision of a court of competent jurisdiction, to infringe any of the essential features of any patent or patents owned by others, the party of the second part shall be under no further obligation to pay royalties and all such payments shall cease." By the third section appellees agreed to de-

fend all suits brought against appellants and to pay all expenses of such defense, and in the fourth appellees agreed to prosecute all infringers. By the agreement appellants are to pay royalties until it has been determined by a court of competent jurisdiction that appellees' patent infringes on that of others. Appellants are continuing to manufacture the spreaders under the patent, and use the name ''National.'' They are claiming and insisting on all the benefits of the contract, and using the patterns and forms they received from appellees under the contract. So far as can be gathered from the cross bill and the parts of the answer expunged, appellants propose to retain and insist upon all rights they have under the contract and to continue to make the spreaders under the contract, but to discontinue paying royalties. Appellants as licensees of appellees are estopped to raise the question of the validity of the patents while they are receiving the benefits of the patent under the contract and the patent has not been adjudged invalid or to be an infringement on others, and the tenth clause of the contract is the measure of appellants' right in that regard. United States v. Harvey Steel Co., 196 U. S. 310; Rhodes v. Ashurst, 176 Ill. 351; Illinois Watch Case Co. v. Ecaubert, 177 Ill. 587; Havana Press Drill Co. v. Ashurst, 148 Ill. 115; White v. Lee, 14 Fed. R. 789; Brown v. Lapham, 27 Fed. R. 77.

A party may not claim the benefits of a contract and at the same time repudiate its burdens. If appellants were not continuing to make the spreaders and were not receiving the benefits of the contract, there would be some reason in their contention that the State court had jurisdiction to consider the invalidity of the patent as a defense to the accounting, and to relieve them from its obligation. We are of the opinion that there was no error in rejecting the defense of the invalidity of the patent under the pleadings in the case and in refusing to relieve appellants from the contract.

While some other questions are presented, the disposition of the principal questions disposes of the remaining questions, as it is not seriously contended that there is any error in the accounting. Finding no error in the case the decree is affirmed.

*Affirmed.*