BRADBURY C. BARTLETT, Administrator, *vs.* SAMUEL F. HOL-
BROOK & another.

B. covenanted under seal as follows: "To pay A. the sum of $500 for the grant of a
patent right for building and using a floating dry dock; and for every and each
such floating dry dock as may be built or used by B. the sum of $500 shall be paid
as aforesaid to A., which sum or sums shall be invested in the capital stock of the afore-
said docks; B. to pay A. the profits arising from the use of all such dry docks, propor-
tionally on all such share or shares as may be held by A., quarter yearly:" B. built a
floating dry dock, at a cost of $4,500, and paid A. one ninth part of the profits of its
use for some time, and then refused to continue to make such payments, because the
patent was void; but continued in the undisturbed enjoyment of the patent until
after its expiration,· and by holding it up as valid, prevented others from interfering

with his sole use thereof. *Held*, that A. was the owner of one ninth part of the dock built by B. and entitled to his share of the profits of its use, even after the expiration of the patent; and that the invalidity of the patent was no defence to an action brought oy him against B. for the unpaid balance of such share.

COVENANT by the administrator of John Floyd, against Samuel F. Holbrook and James Dillon, on the following instrument, signed and sealed by the defendants: " To all persons to whom these presents shall come: Know ye that we, Samuel F. Holbrook and James Dillon, of the city of Boston, Massachusetts, separately and jointly do bind ourselves, our heirs and assigns, to do and perform as hereinafter mentioned. That is to say, to pay unto Mr. John Floyd, of Kittery, county of York, State of Maine, his heirs or assigns, the sum of five hundred dollars, for the grant of a patent right for the building and using a floating dry dock. And for every and each such floating dry dock, as may be built or used by us, the aforesaid Samuel F. Holbrook and James Dillon, our heirs and assigns, the sum of five hundred dollars shall be paid to the aforesaid John Floyd, his heirs or assigns; which sum or sums as aforesaid shall be invested in the capital stock of the aforesaid docks. That the aforesaid floating dry docks are to be used in that part, and no other place, but in the city of Boston, south of Long Wharf only. That we, Samuel F. Holbrook and James Dillon, do bind ourselves, our heirs and assigns, to pay John Floyd, his heirs or assigns, the profits arising from the use of all such dry docks aforesaid, proportionally on all such share or shares as may be held by the said John Floyd, quarter yearly. In witness whereof we have set our hands and seals this fourth of September in the year one thousand eight hundred and thirty five." Writ dated October 26th 1846.

The parties stated the following case: On the 19th of August 1826 John Floyd, the plaintiff's intestate, obtained letters patent for a floating dry dock. The defendants, who were ship carpenters, and engaged in repairing vessels, in 1835, before they made the agreement declared on, and without knowing of Floyd's patent, commenced the construction of a floating dry dock in the harbor of Boston, somewhat on Floyd's plan, and

finished it in October 1835, and have continued to use it suc-cessfully ever since. The cost of the dock was $4,500, and the plaintiff contends that Floyd was the owner of one ninth of the dock, and as such entitled to that proportion of the rents and profits of the use thereof; and he brings this action to recover that proportion, the amount of which, due to the plaintiff at the date of the writ, as reported by the auditor to whom the case has been referred, is $1405.40. No fraud is alleged against Floyd in the transaction, and it is admitted that he believed himself to be the original inventor of the dock patented by him. Settlements were made from time to time between Floyd and the defendants, the defendants paying to Floyd one ninth part of the profits or income of said dry dock, arising from the use thereof for the dockage of vessels. Floyd died on the 9th of June 1838, and the defendants then, for the first time, refused to pay said proportion of rents and profits, on the ground that the invention had been previously in use, and that the patent was void; but agreed to continue to pay as before, if they could have security against any disturbance in their enjoyment under the patent. The defendants, while they denied the validity of the patent, admitted that they had held it up for the purpose of preventing, and that it had prevented, others from interfering with them. The patent expired by limitation on the 19th of August 1840, until which date, and for some time after, there was no infringement of the sole use of said dry dock by the defendants in the harbor of Boston; and no floating dry dock was built or used in Boston by any other person than the de-fendants until 1846.

The defendants objected that in point of law the plaintiff was not entitled to recover, on the ground that the consideration of the defendants' covenant was the use of a patent right, that the patent was void, and that the consideration had therefore failed; and they offered evidence to prove the invalidity of the patent. The plaintiff denied the right of the defendants to con-test the validity of the patent in this action. The defendants further objected that the plaintiff could not recover for any part of the profits of the dock since the expiration of the patent.

A verdict was taken for the plaintiff upon the auditor's report, subject to the opinion of the court, upon the foregoing facts, whether the defendants are entitled to give in evidence the in-validity of the patent, as a failure of consideration, to defeat the plaintiff's claim. If the court shall be of opinion, that the invalidity of the patent is a defence to the action, the verdict is to be set aside, and a new trial granted; otherwise, judgment is to be rendered on the verdict; unless the court shall decide that the defendants are liable to pay for the rent or use of the ninth part of the dock during the time of the patent only, in which case the amount of the verdict is to be settled by the auditor accordingly.

*C. G. Loring & C. P. Curtis, Jr.* for the defendants. The consideration for the defendants' covenant was the grant of an interest in a patent right, or of a license to use a patent right, neither of which was ever in fact made. The consideration of the covenant having thus failed, the invalidity of the patent is a good defence to this action. *Hayne v. Maltby,* 3 T. R. 438. *Dickinson v. Hall,* 14 Pick. 217. *Bliss v. Negus,* 8 Mass. 46. *Vickery v. Welch,* 19 Pick. 523. *Chanter v. Leese,* 5 M. & W. 698. Com. Dig. Covenant, F. There is nothing in the language of the defendants' covenant, which can be construed into an admission of the validity of the patent; the defendants therefore are not estopped to deny its validity. Curtis on Patents, § 199. *Hayne v. Maltby,* 3 T. R. 438. *Bowman v. Taylor,* 2 Ad. & El. 278. *Lainson v. Tremere,* 1 Ad. & El. 792. *Cooch v. Goodman,* 2 Ad. & El. N. R. 580. *Neilson v. Fothergill,* Webst. Pat. Cas. 290. The plaintiff cannot sustain this action on the ground that his intestate owned any part of the defendants' dock; for no part of the dock ever vested in him. The defendants' contract being executory, and the consideration having failed, nothing passed by the instrument declared on. Besides, in order to use the dock, it is necessary to have some estate in the soil under it; and therefore no permanent right in it could vest without a written transfer. The defendants' covenant was only a method of determining the rate of tariff to be paid by them for the exclusive use of the supposed patent in the south-

ern part of Boston.   If the defendants are liable at all, their liability for such tariff ceased with the expiration of the patent.

*B. F. Hallett,* for the plaintiff.   1.  The agreement was made in good faith on both sides; and the invalidity of the patent is no defence to this action on the defendants' covenants.  *Taylor* v. *Hare,* 1 New Rep. 260.   *Wilder* v. *Adams,* 2 Woodb. & M. 332.  Curtis on Patents, §§ 199, 200.   *Holden* v. *Curtis,* 2 N. H. 65.  *Bowman* v. *Taylor,* 2 Ad. & El. 278.   *Fallowes* v. *Taylor,* 7 T. R. 477.   *Williams* v. *Hicks,* 2 Verm. 36.   *Stevens* v. *Head,* 9 Verm. 174.   *Vaughan* v. *Porter,* 16 Verm. 266.   The extent of the decisions as to failure of consideration is, that payment of the price of a void patent cannot be enforced.  *Dickinson* v. *Hall,* 14 Pick. 217.   Floyd's patent was not a nullity, but an existing interest; it remained in force through its term, and the defendants had all the consideration and enjoyment they stipulated for, to the same extent as they could have had of a valid patent.  2.  A substantial part of the agreement was executed by the investment of Floyd's $500 in the dry dock.   The defendants having derived some benefit from the agreement, and the price to be paid by them for the use of the patent and of Floyd's model having been paid, it could not be recovered back, in the absence of fraud.  *Bliss* v. *Negus,* 8 Mass. 46.   *Taylor* v. *Hare,* 1 New Rep. 260.   Chit. Con. (8th Amer. ed.) 539, 540.   3.  The validity of the patent is not in issue.   The plaintiff sues for the income of his share of the dock, which the defendants have expressly covenanted to pay him.   And the defendants have recognized this share of the dock to be Floyd's property, by accounting to him for the income thereof until his death.   4.  The defendants are estopped, by their deed, to deny the validity of the patent.   Curtis on Patents, § 200.   *Hayne* v. *Maltby,* 3 T. R. 438.   *Bowman* v. *Taylor,* 2 Ad. & El. 278.   *Bonaffé* v. *Woodberry* 12 Pick. 463.   *Dyer* v. *Rich,* 1 Met. 180.   2 Smith's Lead. Cas. 459.   5.  The property in one ninth part of the dock being in Floyd, his rights are not affected nor limited by the expiration of the patent; but the defendants, so long as they use the dock, and make any profits from its use, must pay the rent stipulated in the agreement.

THOMAS, J. The contract of the parties was executed; the consideration of the grant was paid, and invested in the dry dock. Of one ninth part of the dry dock Floyd became the owner, and as such, as well as under the express covenants of the defendants, entitled to his share of the profits of its use. The defendants have recognized such title, and from time to time, until the decease of Floyd, have accounted and settled with him upon that basis. If it were competent for the defendants to show a failure of consideration for the share of Floyd, the facts offered in evidence fall far short of such proof. The defendants continued in the enjoyment of the patent, undisturbed, until its expiration. They held it up to prevent any interference with their sole and exclusive use of the dock in the harbor of Boston, and it accomplished the purpose. That which the patent was designed to secure they had, and for Floyd's benefit as well as their own.      *Judgment on the verdict.*