JOHN W. RHODES *et al.*

*v.*

JOHN L. ASHURST *et al.*

*Opinion filed October 24, 1898—Rehearing denied December 20, 1898.*

1. RES JUDICATA—*affirmance of decree establishing right to accounting is res judicata.* The affirmance of a decree finding the existence of facts which give a right to an accounting and directing the basis of the account, is *res judicata* upon the parties, and they cannot afterward be heard to say that the decree was merely interlocutory, or that the basis fixed for the accounting was incorrect. ·

2. PATENTS—*when State court may entertain a bill for accounting for royalties.* A State court has jurisdiction of a bill by the owner of a patent for an accounting for royalties accruing from the use of his patent by a manufacturing company under a contract with a third party, who claimed a right to an assignment of the patent under an agreement with the owner, which bill proceeds upon the theory of a ratification of the contract by the owner of the patent so far as executed, but also claims the royalties in equity.

3. SAME—*when parties cannot set up infringement to defeat jurisdiction of State court as to royalties.* Royalties accruing from use of a patent during the pendency of an appeal from the decree of a State court holding invalid the license under which the right to use the patent was claimed and ordering an accounting for royalties, are within the jurisdiction of the State court as the subject of accounting, upon the affirmance of the decree, where the license was not surrendered after the decree but was treated by the users as in force.

4. ESTOPPEL—*licensee estopped to question validity of patent.* A licensee of a patent, who has enjoyed the benefits thereof, is estopped to question the validity of the patent in any proceeding relating to acts done by him under the license.

*Rhodes* v. *Ashurst*, 71 Ill. App. 242, affirmed.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit court of Mason county; the Hon. GEORGE W. HERDMAN, Judge, presiding.

The Havana Press Drill Company and the plaintiff in error Rhodes filed a bill in the circuit court of Mason county, against John L. and Lewis B. Ashurst, praying for the specific enforcement of an agreement to assign a patent numbered 297,961, concerning an improvement in grain-drills. After answering this bill the Ashursts filed a cross-bill, in which it was alleged that Lewis B. Ashurst was the owner of said patent, but that John W. Rhodes had entered into a contract with the Stoddard Manufacturing Company for the manufacture of wheat-drills embracing the improvement covered by said patent, and for the payment of certain royalties. The prayer was for the cancellation of the license attempted to be conveyed by Rhodes and for an accounting. Answers were filed, and replications thereto. Evidence was taken, and on the hearing the original bill was dismissed for want of equity and a finding and decree were entered in favor of the complainants in the cross-bill. By appeal this decree was brought to the Appellate Court and then to this court, where it was affirmed. A transcript of the order of affirmance was duly filed in the circuit court, and thereupon the master in chancery proceeded to take evidence and state an account in accordance with the directions of the decree. The master's report shows that the entire royalty under the Rhodes-Stoddard contract up to January 1, 1895, amounted to $22,689. This royalty, however, covered the use of other patents which Rhodes had the right to assign, and the master apportioned it so as to allow Lewis B. Ashurst seventy-six per cent thereof. He also allowed a set-off of $6326.15, arising out of some notes given by John L. Ashurst to the Havana Press Drill Company. Objections were filed before the master by Rhodes

and the Stoddard Manufacturing Company, and also by John L. and Lewis B. Ashurst. These being overruled by the master, were renewed as exceptions before the court. Part of the exceptions were sustained, and the court apportioned the royalty so as to give one-half to each party; then deducted the set-off, and gave judgment in favor of Lewis B. Ashurst for $4795.60 against Rhodes and the Stoddard Manufacturing Company. An appeal was taken from this decree to the Appellate Court, where the finding was affirmed. The case now comes before us on a writ of error for further review, both parties assigning errors.

When the former case was before us a full statement was made of all the facts out of which this litigation arises, and a repetition of the same here would be useless. The case is reported in 148 Ill. 115.

LYMAN LACEY, Sr., and JOHN G. MANAHAN, for plaintiff in error John W. Rhodes.

CHARLES M. PECK, for plaintiff in error the Stoddard Manufacturing Company.

JOHN W. PITMAN, for defendants in error.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The practice in chancery where an accounting is prayed and where the right to an account is denied is, that the preliminary matter in bar of the accounting should first be disposed of. A decree is then entered finding the facts to exist which give a right to the accounting, directing the basis of the account, and referring the whole matter to the master in chancery to take evidence as to the state of the account, and to report the evidence and a statement of the account. (*Ligare* v. *Peacock*, 109 Ill. 94.) Such a decree was entered in this case, and whatever might have been its effect as *res judicata* had it not been appealed from, the plaintiffs in error certainly are now concluded by it. Having appealed from it and having procured the

decision of this court upon the questions involved, they cannot now be heard to say that it was merely interlocutory.    5 Ency. of Pl. & Pr. p. 1046.

Much of the argument of counsel is devoted to the question of whether the Stoddard Manufacturing Company used the invention covered by the patent in question.    It is affirmed by counsel for plaintiffs in error that it did not.    There are two answers to this position: First, the pleadings admit that it did; and second, the finding of the former decree is conclusive on that point.    The abstract shows that the answer to the cross-bill "admits that before and since January 1, 1891, said Stoddard company made some drills with said Ashurst improvements attached thereto as part thereof," and also that the decree recites that said company had made drills "with said improvements on."

As we understand the evidence, there is no claim that there was any difference in the drills manufactured, but the contention is that the patent does not cover the device used.    This question is certainly foreclosed by the former decree.    In the consideration of the case as it now comes before us, we must begin, then, with the assumption that the invention in question was used; that it belonged to Lewis B. Ashurst; that the contract between Rhodes and the Stoddard company covered this patent, as well as others which belonged to Rhodes; that Lewis B. Ashurst is entitled to an accounting, and that the basis thereof is to be a division of the royalty according to the relative value and importance of the respective appliances covered by said patents.    The main question for decision, therefore, is, has an equitable division been made?

Before disposing of this question we ought, perhaps, to notice the point made as to jurisdiction.    It is claimed that the subject matter of this suit is cognizable solely in the Federal courts.    Our former decision in this case is adverse to that position.    We have again examined the question, and feel satisfied that that conclusion is correct.

The theory of the cross-bill is, that Lewis B. Ashurst, as the owner of the patent, has the right to demand the royalty agreed to be paid by the Stoddard Manufacturing Company to Rhodes under the contract which they entered into. It proceeds upon the basis of a ratification of that contract so far as executed, but avers that the money arising therefrom is in equity the property of Ashurst. The foundation of the action is clearly the contract. Nor can it be said that the court was without jurisdiction as to the royalties accruing after the entry of the original decree. The assignment of the license was thereby declared void, but the Stoddard company continued, during the pendency of the appeal, to manufacture drills the same as before. It made no surrender of the claimed license. So long as the company and Rhodes continued under that contract they were in no position to say that the patent was used without license, and that they were infringers, and not licensees. The plaintiffs in error continued to stand in the same relation to Lewis B. Ashurst after that decree as before, and the same right to an accounting existed.

Recurring to the question of the division of the royalty, so far as the Stoddard Manufacturing Company is concerned, although it assigns error in this regard, it would seem to be a matter of no moment to it whether Ashurst succeeds in his contention or Rhodes in his. Its position is that of a mere stakeholder. It concedes the royalty must be paid, therefore to whom it is to be paid is not a vital question to it. The real controversy lies between Rhodes and Lewis B. Ashurst.

In the account stated by the master, royalty was charged on all drills made up to January 1, 1895. It is contended that the accounting should have ceased upon the entry of the former decree, November 13, 1891. One of the exceptions raises this question. We think the point not well taken. The operation of the decree was suspended during the appeal, but the manufacture of drills

continued under the same contract. The interlocutory decree usually directs that all matters of account shall be adjusted down to the time of stating the account, even though no facts are stated in respect to them in the pleadings. (1 Ency. of Pl. & Pr. p. 103.) To hold that matters of account arising during the pendency of the suit could not be considered would be to circumscribe the power of equity to do complete justice, which is one of its attributes.

As to the relative value of the patents embraced in the Rhodes-Stoddard contract we find the evidence conflicting, and in some respects uncertain and unsatisfactory. From the nature of the case it could hardly be expected to be otherwise. To estimate how much value one of several devices adds to a piece of machinery is ordinarily a difficult question. Here each party claims all for his own invention and nothing for that of his adversary. Plaintiffs in error say that the Ashurst patent is valueless because it is lacking in novelty and is in fact an infringement upon other prior patents. Having accepted a license under it they cannot now attack it in that regard. "A licensee who has admitted, either expressly or impliedly, in the license contract, or *in pais*, the validity of the license contract, or has enjoyed benefits under it, is estopped from contesting the validity of the patent in relation to acts done under the license." (13 Am. & Eng. Ency. of Law, p. 570; *Kinsman* v. *Parkhurst,* 18 How. 289.) "They have made and sold the machines under complainant's title and for his account, and can no more be allowed to deny that title and retain the profits to their own use, than an agent, when he has collected a debt for his principal, can insist that the debt was not justly due." *Hall Manf. Co.* v. *American Railway Supply Co.* 48 Mich. 331; *Bartlett* v. *Holbrook,* 67 Mass. 114.

It is claimed that the Ashurst patent merely covers the particular mode of fastening the spring. Rhodes and the Stoddard company have themselves put a different

construction upon it, else they would never have admitted its use, for it is clear that the spring used by the company had a different fastening from that illustrated in the Ashurst patent. The statement in the patent itself is, that the invention consists in a series of springs attached to the runners and front frame, so that pressure applied on the springs acts directly on the heel of the runner to press it into the earth.. The specifications expressly state that this spring may be fastened in any suitable or convenient manner. Nor is there any requirement that the spring must be flat.

Examining the testimony in the light of this construction of the patent we think a fair division of the royalty has been made. The evidence of the defense was principally directed to an attack upon the novelty of the device and as to whether it was used. A number of witnesses, farmers and implement dealers, testified that the spring was the most important of the attachments. Rhodes and Ashurst each thought all of the value lay in his improvements. One J. P. Mowder gave it as his judgment that each contributed one-half. William Heberling divided it by giving Rhodes one-third. A. E. Windsor put the Rhodes devices at twenty-five cents per drill. George Bell put them at forty cents per drill. Outside of Rhodes no witness for the defense gave any opinion as to the relative value of the attachments. The contention that the patent is valueless results from a narrow construction of it not warranted in this case by the relation in which the parties stand to each other.

A statement is made by counsel for plaintiffs in error to the effect that the Stoddard company has made payment in full to Rhodes of all royalties, and therefore it should not be held. It seems incredible that such payments could have been made and no clearer evidence thereof appear in the record. If the amounts designated opposite the word "payments," at the foot of the royalty statement furnished by John W. Stoddard, represented

actual payments, it is remarkable that in his testimony he should refer only to the payment of the first item. We are inclined to think this statement was intended to represent the time when the payments became due. The first part of the statement shows the time of manufacture. The royalty, however, was not payable, under the contract, until January 1 next after the sales were made. If it were actually true that payment was made it should have been shown with certainty. In our judgment the objection has no foundation in fact.

The cross-error presents the question of whether the set-off allowed was proper. John L. Ashurst gave his notes to the Havana Press Drill Company in consideration of a certain number of shares of its capital stock, and also granted the license in question to it as a part of the same transaction. The deduction represents the balance due on these notes. A license is not assignable, strictly speaking, and when Lewis B. Ashurst elected to affirm the Rhodes-Stoddard contract as to the license obtained through John L. Ashurst and the Havana Press Drill Company he must be held to have taken it subject to all equities,—particularly in view of the fact that the assignment of the patent from his brother to him recited that it was subject to the rights of the Havana Press Drill Company. It may seem a hardship upon him to be compelled to pay the debt of John L. Ashurst, but he might have elected to treat the assignment of the license as a nullity and proceeded against the Stoddard Manufacturing Company as an infringer, in which case this question would not have arisen. We find the cross-error not well taken.

On the whole record we think the decree of the circuit court is equitable and just, and that it was properly affirmed by the Appellate Court.          *Judgment affirmed.*

Mr. JUSTICE BOGGS, having heard this case in the Appellate Court, took no part in its decision here.