465 F.2d 1303
 175 U.S.P.Q. 199
 UNARCO INDUSTRIES, INC., an Illinois corporation and
Overhead Door Corporation, an Indiana corporation,
Plaintiffs-Appellees,
v.
KELLEY COMPANY, Inc., a Wisconsin corporation, Defendant-Appellant.
 No. 71-1522.
 United States Court of Appeals,
 Seventh Circuit.
 Argued June 7, 1972.
Decided Sept. 7, 1972.
 
 Norman C. Skogstad, Grafton, Wis., David L. Petersen, Elwin J. Zarwell, and John S. Sammond, Milwaukee, Wis., for defendant-appellant.
 Stanley J. Adelman and Frederic S.Lane, Chicago, Ill., for plaintiffs-appellees.
 Before DUFFY, Senior Circuit Judge, DURFEE*, Senior Associate Judge and ESCHBACH**, District Judge.
 DUFFY, Senior Circuit Judge.
 
 
 1
 This is a suit for declaratory relief seeking the proper construction of a written agreement. The critical question is whether or not the patent license herein considered was assignable without the consent of the licensor. The District Court held the agreement to be assignable. A motion to restrain production and sale of the patented product pending a decision by the District Court was held in abeyance and finally denied.
 
 
 2
 The principal product manufactured by Kelley Company, Inc., the defendant herein, is based upon a patent granted to Garrett P. Kelley. The Company produced material-handling equipment known as "dockboard." This product permits the movement of merchandise from the bed of a truck to a loading dock.
 
 
 3
 In 1964, Kelley became aware that Unarco, a large corporation, was marketing and selling a dockboard which Kelley believed infringed its patented invention.
 
 
 4
 Kelley Company sued Unarco in the Federal District Court in Tennessee for patent infringement. This litigation became protracted and thus very expensive. Settlement discussions were held, and it became apparent to all that it would be for the best interest of both parties to enter into a nonexclusive license agreement terminating the litigation.[1]
 
 
 5
 It became apparent that Unarco was not a serious competitor in the dockboard industry. Unarco's principal interest was to use dockboard as a selling tool for its principal product which was shelving. The settlement permitted Unarco to manufacture annually a few hundred dockboards without paying a royalty. While operating under this agreement, Unarco never exceeded the minimum number of royalty-free dockboards anticipated by the parties to the agreement.
 
 
 6
 Thereafter, the President of a Texas conglomerate named Overhead Door attempted to buy or merge with Kelley Company because of its desire to operate in the dockboard field. No agreement was reached.[2]
 
 
 7
 Overhead Door then contacted Unarco with respect to the possible purchase of Unarco's dockboard division [Sturdibilt]. On August 4, 1969, Overhead Door and Unarco entered into a contract whereby Overhead Door agreed to purchase and Unarco agreed to sell Unarco's dockboard business and all the assets used in connection therewith. In this contract, Unarco agreed not to compete for at least five years in the dockboard business with Overhead Door, and furthermore warranted that "Every contract, license agreement or other intangible included among Dock Board Assets is assignable by UNARCO without prior consent of any other person. . . ."
 
 
 8
 Subsequently, in a letter dated August 13, 1969, the attorney for Kelley was notified by a newspaper article of the contemplated acquisition of the Sturdi-bilt (dockboard) division of Unarco by Overhead Door. Overhead Door was advised by Kelley's attorney that their license agreement for the patents "was and is limited to Unarco."
 
 
 9
 On October 20, 1969, Unarco and Overhead Door commenced this action in District Court for a declaratory judgment with respect to the assignability of the nonexclusive patent license.[3]
 
 
 10
 The District Court held that the compromise agreement was a simple contract to be construed under the common law of the State of Illinois. Further, that as Illinois common law views a liberal construction of the assignability of all contracts, the license of the patent was assignable.
 
 
 11
 Defendant Kelley points out that the nonexclusive license agreement or contract between Kelley and Unarco was not only the result of a compromise settlement but it was, in fact, a forbearance.
 
 
 12
 Kelley points out that if the judgment of the District Court is sustained, Kelley's refusal to sell out to Overhead Door will be circumvented, and Overhead Door would, indirectly, obtain Kelley's patent rights which Kelley had consistently refused to sell to Overhead Door.
 
 
 13
 The threshold question before our Court is whether the law of the State of Illinois, where the contested agreement was consummated, applies, or whether determination of this issue in federal court falls within one of the exceptions to the doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) requiring the application of federal common law.[4]
 
 
 14
 The Supreme Court considered this exception to Erie in Sola Electric Co. v. Jefferson Co., 317 U.S. 173, 176, 63 S.Ct. 172, 87 L.Ed. 165 (1942). In that opinion regarding patent license litigation, the Supreme Court also considered the application of estoppel and whether estoppel in litigation concerning patent licenses and the Sherman Act was a state or federal question. The Court held that estoppel as applied was a federal question where, if invoked, it would thwart the purposes of statutes of the United States. The Erie doctrine was circumvented by the Court in Sola Electric Co., supra, by the following passage:
 
 
 15
 "It is familiar [doctrine] that the prohibition of a federal statute may not be set at naught, or its benefits denied, by state statutes or state common law rules. In such a case our decision is not controlled by Erie R. Co. v. Tompkins, 304 U.S. 64 [58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.] There we followed state law because it was the law to be applied in the federal courts. But the doctrine of that case is inapplicable to those areas of judicial decision within which the policy of the law is so dominated by the sweep of federal statutes that legal relations which they affect must be deemed governed by federal law having its source in those statutes, rather than by local law. Royal Indemnity Co. v. United States, 313 U.S. 289, 296 [61 S.Ct. 995, 997, 85 L.Ed. 1361;] Prudence [Realization] Corp. v. Geist, 316 U.S. 89, 95 [62 S.Ct. 978, 982, 86 L.Ed. 1293;] Board of Comm'rs. [of Jackson County] v. United States, 308 U.S. 343, 349 [350, 60 S.Ct. 285, 287, 288, 84 L.Ed. 313;] cf. O'Brien v. Western Union Telegraph Co. [1 Cir.,] 113 F.2d 539, 541. * * * To the federal statute and policy, conflicting state law and policy must yield."
 
 
 16
 Article I, Section 8, Clause 8 of the United States Constitution provides that Congress has been granted the power ". . . [T]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." This exclusive and personal concept of patents was considered by Congress upon implementation of the Patent Act of 1952[5] and other legislation aimed at federal control of patent regulation. When an inventor or person holding patent rights desires to license or relinquish any part of the patent monopoly, such person is utilizing the monopoly of rights intended by the framers of the Constitution and the legislation of Congress to reward invention and originality. This monopoly conferred by federal statute as well as the policy perpetuating this monopoly, so affects the licensing of patents, and the policy behind such licensing is so intertwined with the sweep of federal statutes, that any question with respect thereto must be governed by federal law.
 
 
 17
 We are of the opinion that the question of assignability of a patent license is a specific policy of federal patent law dealing with federal patent law. Therefore, we hold federal law applies to the question of the assignability of the patent license in question.
 
 
 18
 We agree with Kelley that we are here considering a specific policy of the patent law dealing with federal patent rights, and in that respect our problem does not involve the general state of Illinois contract law.
 
 
 19
 The long standing federal rule of law with respect to the assignability of patent license agreements provides that these agreements are personal to the licensee and not assignable unless expressly made so in the agreement. Troy Iron & Nail Factory v. Corning, 55 (14 How.) U.S. 193, 14 L.Ed. 383 (1852); Hapgood v. Hewitt, 119 U.S. 226, 7 S.Ct. 193, 30 L.Ed. 380 (1886); Lane & Bodley Co. v. Locke, 150 U.S. 193, 14 S.Ct. 78, 37 L.Ed. 1049 (1893); Wood Harvester Co. v. Minneapolis Harvester Co., 61 F. 256 (8 Cir., 1894); Bowers v. Lake Superior Contracting, 149 F. 983 (8 Cir., 1906). See also Deller's Walker on Patents, Sec. 409 (2d Ed. 1965).
 
 
 20
 In Wood Harvester Co. v. Minneapolis Harvester Co., supra, the license agreement said nothing pertaining to assignability. That Court said 61 F. on page 258: ". . . I think the absence of any words of assignability in this license shows an intent to make it run to [licensees] alone, as clearly as if words of nonassignability had been incorporated therein." In post-Erie federal decisions, this rule of non-assignability has been unquestioned. Rock-Ola Mfg. Corp. v. Filben Mfg. Co., 168 F.2d 919 (8 Cir., 1948), cert. den. 335 U.S. 892, 69 S.Ct. 249, 93 L.Ed. 430.
 
 
 21
 This rule of non-assignability absent consent has been adhered to by state[6] and federal courts. We therefore hold the District Court was in error in departing from this well established rule.
 
 
 22
 We hold the nonexclusive license agreement which was, in fact, a forbearance of suit, here in question was personal, and that it was not assignable without Kelley's consent. Further, the attempted assignment by Unarco Industries, Inc. to Overhead Door was and is void.
 
 
 23
 The judgment of the District Court is Reversed.
 
 
 
 *
 Senior Associate Judge James R. Durfee of the United States Court of Claims is sitting by designation
 
 
 **
 District Judge Jesse E. Eschbach of the Northern District of Indiana is sitting by designation
 
 
 [1]
 The license agreement pursuant to the settlement between Kelley and Unarco was executed on January 1, 1968. The license provided that Kelley grant Unarco for the entire term of specified patents "a nonexclusive license to make, have made, use and sell dockboards coming within the scope of any claims of any of the said patents." The license further provided for royalties on dockboards produced by Unarco over a stipulated minimum. Also, as part of the agreement, Unarco issued a nonexclusive license agreement to Kelley for two Unarco patents under which agreement Kelley was to pay a royalty
 
 
 [2]
 Appellant Kelley stated in its brief to this Court "This overture and approach by the Texas conglomerate was politely rebuffed."
 
 
 [3]
 On October 23, 1969, three days after commencing this action, Unarco entered into an assignment of licensing agreement with Overhead Door, assigning to Overhead all their rights to royalties from Kelley under that agreement for the use of Unarco's patents
 
 
 [4]
 The exception to application of state law to outcome determinative questions appears on page 78 of 304 U.S., on page 822 of 58 S.Ct. of Erie, supra "Except in matters [governed] by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the state."
 
 
 [5]
 35 U.S.C. Sec. 1 et seq
 
 
 [6]
 Although we need not consider state law, Illinois law is also well settled. The case of Havana Press Drill Company v. Ashurst, 148 Ill. 115, 35 N.E. 873 (1893) was not called to the attention of the District Court. In that case, a license was granted which was thereafter assigned. There was no statement in the license as to its assignability. The Illinois Supreme Court there stated: "In the present case the Drill Company had no authority to assign the license for two reasons, (1) Because the license to it did not run to its assigns, and was, therefore, merely personal. . . ." See also Smith v. Preston, 170 Ill. 179, 48 N.E. 688 (1897); Rhodes v. Ashurst, 176 Ill. 351, 52 N.E. 118 (1898)